## PREBLE *v.* BATES *et al.*

### (*Circuit Court, D. Massachusetts.* August 23, 1889.)

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

    In an action for conversion of bonds, a witness testified that the words "the property of S." were written across the face of many of them. Many witnesses testified for defendants, who were stock-brokers, that such bonds would not be a good delivery in open market, and the court charged that, if the bonds received by defendants were so marked, defendants would be chargeable with notice. *Held*, after verdict for plaintiff, that a new trial would not be granted defendants on the ground that an inspection of the bonds, discovered after the trial, showed no such writing on their face.

2. EVIDENCE—SUFFICIENCY.

    Defendants' evidence showed that they sold certain bonds for a third person in 1879, and while plaintiff, on cross-examination, denied possession of these bonds, on direct examination she stated that certain of her funds were invested in that kind of bonds or another sort in 1878. She seldom went to her safe, and may not have known about these bonds. *Held*, that a verdict that such bonds were plaintiff's would not be disturbed.

At Law. On motion for new trial.

Action by Sarah A. Preble against Henry M. Bates and others, stock-brokers, for conversion of certain bonds alleged to belong to plaintiff. Verdict for plaintiff, and defendants move for a new trial.

*Benj. F. Butler* and *L. C. Southard*, for plaintiff.

*Samuel Hoar*, for defendants.

COLT, J. The principal ground relied upon by the defendants in this motion for a new trial is newly-discovered evidence. At the trial, Edward Preble swore that on many of the bonds belonging to his mother there was written across the face of them "the property of Sarah A. Preble," and that he had a recollection that it was written across the face of the five $1,000 Chicago sewerage bonds, which were a part of the property in controversy. To meet this, the defendants called numerous witnesses, who testified that such bonds would not be a good delivery in open market. The court charged the jury, in substance, that if the bonds received by the defendants were so marked they would be charged with notice, and, consequently, that they would be liable to account to the plaintiff for their value at that time. The defendants, in support of this motion, now produce the original Chicago sewerage bonds, and, upon inspection, it appears that there was no such writing upon their face. The defendants contend that this evidence is not cumulative, because it is evidence of a different character from any which was offered by their side at the trial upon this issue, and authorities are cited to the effect that cumulative evidence, strictly speaking, is evidence of the same kind, to the same point. Motions for a new trial are addressed largely to the discretion of the court. Without entering into the question of whether the defendants, in the exercise of proper diligence, could not have produced this evidence at the trial, I do not think, in view of the evidence taken as a whole, that the defendants can fairly claim the right to a new trial on this ground. The direct evidence of Preble was not of a positive and conclusive character, and it was so fully met by the defendants' evidence that it does not seem to me that the court should direct a new trial by reason of the discovery of this additional evidence.

The verdict in this case was general, but the jury handed to the court with the verdict a paper containing the special items upon which they held the defendants liable. I do not think, on a motion for a new trial, the court should reject this paper. It is perhaps the best evidence possible of the ground the jury took in arriving at their verdict. Comparing this paper with the evidence, it appears that the jury made a mistake with respect to two items. There was no evidence to support the finding of the jury as to one of the Chicago sewerage bonds, which did not come into the hands of the defendants, but which was sold by Edward Preble to another firm of brokers; nor as to one Minneapolis bond, which it appears was loaned to him by his mother in 1877. With respect to the $2,000 New York and New England bonds, I do not agree with defendants that there was no evidence to support the finding of the jury. By the defendants' evidence, they sold for Edward Preble $2,000 of these bonds, on or about October 31, 1879. While Mrs. Preble denied in

cross-examination the possession of any of these bonds, she stated on her direct examination that the proceeds of the Lewis notes were, about 1878, put into these bonds or into Southern Pacific bonds. Mrs. Preble seldom went to her safe, and she may not have known about these bonds. Taking all the evidence together, I cannot say that the jury were mistaken in their finding on this item. The verdict was for $34,772.88, and there should be a remission of $3,636.53, covering the value of $1,000 Chicago sewerage and $1,000 Minneapolis bonds, with premium and interest, and the plaintiff may elect to take judgment for $31,136.35, or a new trial will be granted. *Cattle Co.* v. *Mann*, 9 Sup. Ct. Rep. 458; *Kennon* v. *Gilmer*, Id. 696.